Thank you very much, Your Honor. Robert Burke, B-E-R-K-E, for the petitioner. Good afternoon, and may it please the Court. And I do appreciate the reservation of the two minutes for rebuttal, should it be necessary. My perspective on this case and where we stand with this case, and what I think is important to the resolution of this case, is to look at the terms substantial evidence and another term that's occasionally used in connection with the analysis of what is substantial evidence, which is the term scintilla. And I think it's important to note from those terms, and it's the position of the petitioner, that those terms are intentionally relative terms. In other words, instead of saying that there's a certain amount or certain degree of evidence that this Court needs to look at to reverse the finding of an immigration judge or of the BIA, they're using the term substantial. And substantial, I define as being a relative term, because substantial can only really be adjudicated by looking at the weight of the evidence that's given on either side of the issue. Now, in this particular case, we have really... Can I ask a question before you go further? When you're talking substantial evidence, you're not talking about which side has the preponderance or the believability. What you're talking about is whether a reasonable judge would find otherwise. That is, are we compelled to go against the Board? So if you could bear that in mind in your argument, I think it would be helpful to me to clarify what your point is. Understood, Your Honor. I do believe that in this case you are compelled to go against the Board. Again, it has to do with the relative weight of the evidence on either side of the particular issue. Now, on the petitioner's side, you have copious background materials. You have the U.S. Department of State. You have the Board's own findings in terms of the prevalence of torture in the Philippines. You have independent witnesses. You have a witness from Amnesty International. You have a witness who's got feet on the ground in the Philippines. So you have a great deal of different materials, all of which go towards the issue of torture and all of which indicate that, yes, in fact, there's going to be torture meted out to the victim. Now, you have the government coming in and saying, in essence, yes, we have all of these materials, but here we have the evidence of this one individual who's a biased individual, who has an interest in the case, who is going to say, oh, but I can, with one word, say that these particular petitioners, that Grayskill is going to fall within an exception, is not going to fall within this mountain of evidence that shows that she's going to be tortured. So substantial evidence, you know, is relative, and it's not any evidence, but it's not just a scintilla of evidence. And I think that within the standards laid forth for substantial evidence, there isn't substantial evidence to support the findings made by the court and made by the Board of Immigration Appeals in this particular case. But I also think it's interesting, and I'm sorry to interrupt. Counsel, this is Judge Mills here. Is there any evidence in the record that Richard King and the King family have so much power over the Philippine government that they're able to make threats that rise to the level of past persecution, pursuant to the standards of Lim and Ruano? Yes, I believe there is, Your Honor, and I pointed it out in one of the briefs, and I believe it may have been the reply brief that I wrote. No, I correct myself, it was in the opening brief, that threats that were made, some of them were actually carried out. Some of them were carried out with the power of the state. So whether Richard King has the power to make good on some, if not all, of these threats is certainly clear from the record. Insofar as that, he said, I'm going to get your entire family arrested, I'm going to implicate your entire family in this. And, in fact, other members of Gray's family, and I believe also Broderick's family, who weren't connected to this incident, to this prosecution at all, all ended up under investigation, some of whom were actually taken into custody. Those who were taken into custody had a post bail, and that was a direct fulfillment of an explicit threat that was made by Richard King and the King family. So I do believe that the record does support the finding that there is substantial evidence that this is an individual who is capable of making good on his threats. I also think, from a Kamal Sass perspective, that the background materials are replete with indicators, with findings from, I believe, and I want to be careful, I believe it's indicated in the Department of State report, but it's certainly indicated in the report to the NGOs that were submitted, that people with great wealth can influence the judiciary. So I think that we have those two, and nobody in the proceedings denied that Richard King is a man of great wealth, and therefore influence. So I think between the evidence that we have, connecting the threats to actual actions taken by the government, in conjunction with the background materials that say, yes, this happened, I do believe that there's more than substantial evidence to indicate that he has the power to motivate the government, absolutely. Moving back to where I was, I do think it's a very interesting wrinkle in this case, because of the board essentially accepting the fact that torture is endemic in the pretrial detention system in the Philippines. The board doesn't deny that torture is something that would be a normal part of this process. They appear to accept that in their decision. So at that point, looking at this in the context that I would like the court to view it in, at that point we've made our case. Now the government comes on, and what they're really trying to do is kind of an affirmative defense. What they're really trying to do, in my perspective, is they're trying to say you made your case, as it applies to everybody else, but we're going to put on some other evidence to say that an exception exists. So I would say even more so than our having to say substantial evidence to support our claim, wouldn't there need to be a finding that there's substantial evidence to support this affirmative defense that the government's actually put on? So I think even more so than saying could the judge reasonably have found, which by the way I take issue with, and again just weighing the weight and the nature and the scope of the evidence that was put on to show that torture is endemic versus the one biased witness who gives assurances for whatever they're worth. But I think even more so than saying it wasn't reasonable, I think we have to say really the burden shifted. Once we can say that the torture is endemic within that culture, within that system, i.e. Kamalfa, the background materials really themselves can make the case that it's more likely than not that an individual is going to be tortured. When you have somebody who's coming up and trying to prove an exception to something, they're really the ones that should bear a burden of proof. And I don't think they've done that with their one singular witness. Now the other issue that I addressed in both briefs, although I think it's a little clearer in the reply brief and probably bears mentioning, is the threat, and we've discussed the threat in response to the Justice's question. I addressed the threat, the nature of the threat, the scope of the threat, the fact that some of these threats were fulfilled, which makes them unavoidably credible, because some of them were actually fulfilled. I don't think that the board really considered the fact that Graysco, at a minimum, is eligible for asylum, and those threats can amount to persecution themselves under the prevailing state of the law. When they're real, when they're credible, when they're imminent, when they're in person, when they're personal, and so on and so forth,  Now, I don't think it's necessarily for this court to say that was persecution or that wasn't persecution without having had the board rule on this issue. But this is a very secondary issue in my mind. And I do think it was there for the board to not make a finding or not make a ruling on the issue of whether the credible threat constitutes a persecution, such that there would have been a presumption of future persecution for Graysco, and we wouldn't really necessarily need to be having this argument. What case do you rely on that such a presumption arises? Where is the case? Do you have a case on that? I don't remember reading a case on that. Well, I'm talking about the presumption of future persecution that arises when there's been proof of past persecution. There's a regulation to that effect. Is that what you're relying upon? Yes, I guess so, Your Honors. It's something that I deal with so often, I just kind of took it as, let's see, it might be contained in Moghrabi, but there is indeed a regulation, or at least that talks about the presumption of future persecution. If there's proof of persecution you're talking about. If there's proof of past persecution, then the presumption arises. And my point is that the threat can do rise to the level pursuant to the women in Rwanda cases. Now, in terms of the, it's interesting that I can't pull out a case to say this is where the presumption of future persecution arises from, but it is certainly contained in the regulations, the presumption exists. I believe I've exceeded my eight minutes. I think you may have. I haven't heard our report, but I believe that you have. I'm sorry, Judge Graber. Hi, I'm back on the line now. We were trying to track down an extra phone number, but yes, ten minutes is up. We'll hear from the government. Thank you. May it please the Court, this is Don G. Scroggins on behalf of the Attorney General in this case. If the Court is aware these facts arise in the context of a money dispute among drug dealers in the Philippines, and as a result of that dispute, there was a charge that petitioners in this case kidnapped the person with whom they had the dispute, who was also connected to, related to people in the government. It is significant that although charges were brought, and there's no contention about that, criminal charges were brought in the genuine criminal prosecution of petitioners, that there's no evidence in the record of any extradition attempt by the Philippines against petitioners. Moreover, there is evidence in the record that the charges have been dropped. We know that the Attorney General of the Philippines has ordered that the charges be dropped, and if they have been, although they might be reinstated, petitioners contend, but if they have been dropped, then the entire basis of petitioners' claims for asylum, withholding, and cat may no longer exist. Those are the ones for kidnapping? All of the charges have been dropped. According to the current status, the Attorney General of the country, the Philippines, has issued an order that they be dropped. Petitioners contend that they may be reinstated. All of them have been dropped for just the kidnapping, that's what I was asking the question. My understanding is that all of the charges have been dropped, there are no charges pending. And even while the charges were in effect, petitioners were successful in avoiding detention, they never spent a day in jail, they had successful and competent counsel to represent them, and they were successful in both avoiding detention and leaving the country to come to the United States. The issue before the court is whether in light of this evidence that the whole basis of the case may no longer exist, that the evidence in the record compels the conclusion that the criminal prosecution will in fact be reinstated, that petitioners would in fact be convicted, and that as a result of that conviction they would in fact receive a prison sentence and then be actually imprisoned, and then suffer mistreatment in prison that would rise to the level of persecution or torture. Counsel, is your assumption about the position of the Attorney General of the Philippines in the record? Yes it is, Your Honor, it's in the testimony. Okay, because it seemed to me that there was at least some conflict as to whether the prosecution in fact was dropped, and that there was some effort to go around that decision. I had another question for you, and it's not entirely clear to me whether this is in front of us or not, but it's an unusual case with the defense. That's a pretty rare thing in what we see. And I was curious about the statement of the legal standard by the board majority, which was, let's see if I can find this, I'm looking, I'm trying to find the page of the administrative record because my copy is kind of bad, but I'm looking at the March 21, 2006 decision on the CAC claim. Correct, it's on page 2. The first page of the decision, in the second paragraph, to constitute torture acts must be inflicted by or at the instigation of, or with the consent or acquiescence of a public official, so far so good, but then they add the following phrase, with custody or physical control of the victim, and I'm ending my quotation there. Yes. I'm curious about where this custody or physical control comes in, because what that suggests is that the police can be complicit, but as long as they don't have custody or physical control, you can be tortured away and it doesn't count. I don't understand that phrase. What is your understanding of that phrase? My understanding, I'm sorry, go ahead. And whether it makes any difference in this case. I don't think it makes any difference in this case, because if petitioners were imprisoned in the Philippines, then certainly the government would have such custody and control. My understanding of that term is that it must be with the consent of the government, with the acquiescence of the government, and at the instance of the government that the torture occurs. I don't think that particular aspect of the standard is applicable to this case, because it's essentially conceded that if they were imprisoned, the government would have custody of them. I think this is, your question reflects that there is conflicting evidence on CAT, on torture, and I use the term CAT for Convention Against Torture Claim in this case, and there is conflicting evidence. The government acknowledged that the evidence is conflicting. Even if the court were to find that it is a close case on the torture conviction, however, the controlling precedence of the Supreme Court and this court and the statute require that, in the words of the Ochave case, which I sent in the 28-J letter to the panel this week, and I trust that you have that Ochave case that I sent in my 28-J letter, the Ochave case says that it does not matter that there is substantial evidence on the other side of the case. All that matters is that there is substantial evidence on the board's side of the case. I have one other question in that regard. There was an argument made both in the brief, particularly the reply, and in the oral argument today that the board didn't explicitly or explicitly enough rule on whether Missisco had experienced past persecution. Your Honor, my response to that is that it is simply an incorrect statement which mischaracterizes the record. On page 377 of the record, which is the first board decision of May 18, 2005, on page 377, three lines from the bottom of the page, the board says, Respondents, plural, have not met their burden of establishing that they suffered past persecution. The board very expressly made that finding, and I have no explanation for why Petitioner makes that argument unless he's relying only upon the second board decision. Both board decisions are here in light of the remand. The board remanded to make sure that all evidence was considered because the board recognized precisely what Mr. Burke has said. He's correct in saying that the country report does say that there are incidents of torture. As a consequence, the board wanted to make very, very certain that all evidence could be considered, that Petitioners had a full opportunity to present all their evidence, and they did. Again, I say that substantial evidence, the court's inquiry in this case, is limited to determining whether or not the board's decision is supported by substantial evidence. Now, one issue is what does substantial evidence mean? Judge Mills, I'm sure, is more familiar than I am and perhaps many of us with respect to what a directed verdict is. The Supreme Court, in the case of Consolo v. Federal Maritime Commission, said that substantial evidence means such relevant evidence as a reasonable mind might accept is adequate to support a conclusion. And with respect to a district court judge such as Judge Mills, substantial evidence means the evidence that is sufficient to turn aside a directed verdict to a jury on a fact issue. That's the words of the Supreme Court in explaining the quantity of evidence that is required for substantial evidence. If the answer of the court in its inquiry, and I would suggest again that the inquiry is limited to whether or not there is substantial evidence supporting the board's conclusion, if the answer is yes, that's the end of the case. The Anchovy case says quite clearly that if the answer is yes, there is substantial evidence in support of the board's decision, then that standard dictates the result. We might look just for a quick... Go ahead. Oh, sorry. You are at your time. Go ahead. Thank you. You may finish your thoughts briefly. My wife says I come at nine minutes. I'll follow your guide. If you might look at the substantial evidence upon which the board relied, the charges have been dismissed. Mr. Baratua, the co-defendant in the criminal investigation, has been imprisoned in the very prison they fear they will be tortured, and there is unrebutted evidence that he has not been harmed. The other family members, as Mr. Burke pointed out correctly, were also indicted and charged in this criminal conspiracy of dealing drugs. They were charged specifically with check-kiting, money laundering, apparently. It was related to that conspiracy. They received the same threats of death from Mr. King, and they remain in the Philippines unharmed. Moreover, the evidence in the record from petitioners themselves, if you look at the evidence from Amnesty International, Mrs. Go says that she appears raped. If you look on page four of the record, the second board decision, the second paragraph addresses directly the information from Amnesty International, which refers to the social status of the types of people who are tortured in prison. The social status of petitioners in this case is that they are prominent, they are wealthy, according to the evidence in the record. And what the Amnesty International evidence, the board quotes on page four, says that the victims of torture are from disadvantaged social groups, including suspected... Thank you, counsel. You have exceeded your time, and I think that we do understand your position. I have a question, and if I might just beg leave of the court. Sure. And that is, is the court interested... I have a comment, which I'm sure I could present in one minute or one and a half minutes, in response to the issue that you raised, Judge Graber, at the last oral argument, regarding whether there should be a rule on adverse credibility... I'm sorry, on the weight of evidence findings similar to that of adverse credibility. I've had an opportunity since the last oral argument to think about that. If the court were interested, I would be happy if they would grant me one minute to at least address that question. You have one minute, and then opposing counsel may have a minute for rebuttal as well. Okay. Thank you, Ronna. You raised the question whether there should be rules for immigration judges when they weigh evidence, give less weight to one kind of evidence than another, similar to the rules that are imposed by adverse credibility. I would answer that the answer is no, there should not be. In adverse credibility decisions, a finding, essentially the applicant's... all of his evidence is negated. It goes to zero. That is a draconian sanction. That's why the court has devised rules that the immigration judge must formulate specific and cogent reasons and must give an opportunity for the applicant to explain omissions and conflicts. In contrast, and in sharp contrast, when an immigration judge finds some evidence more persuasive than other evidence, he is not saying that that witness is lying. In an adverse credibility decision, he is saying this person is lying to the court. With weight of evidence, the immigration judge is saying this evidence or this testimony from an expert witness is more persuasive than the expert witness on the other side. It doesn't mean either witness is lying. Merely that some evidence is more persuasive. Under those circumstances, there is not a need for a rule. I appreciate your additional comments. We'll hear finally from Mr. Berg. Five real quick points, Your Honors, and thank you very much for the opportunity to reply. Preliminarily, I do want to indicate that yes, I was responding to the board's last decision. I thought it should have been decided in the last decision that the board wrote because there had to be more evidence. Number two, the government's characterization of this is in between drug dealers, there's no evidence on the record to show that Graysco was ever involved in drug dealing or drug trafficking. There may have been other evidence, but not relating to Graysco. Number two, the government's argument about the charges having been dropped is in essence an argument that it changed country conditions, that something happened in the country of origin. That would give them a very explicit burden of proof under the state of the law. They would have a burden of proving that the conditions had actually changed, and they would actually have the affirmative burden on that. In terms of the presumption of past persecution, it was cited in my brief. The case is Tawadris v. Ashcroft, and that's the case that talks about the presumption of future persecution upon the establishment of past persecution. Last one, the government also said that you would have to make assumptions about conviction and imprisonment, and I would argue that that's actually not true, because the record does contain sufficient information for the court to make the finding. In fact, it's pretty replete with information to show that there are these unusually long and sometimes interminable periods of pretrial detention, and that the torture also occurs as a matter of natural course in terms of pretrial detention. So they would not actually have to be convicted. They would not actually have to be imprisoned post-conviction, that the torture arises even during pretrial detention. Last two points, in terms of Baratun not having been harmed or not having been tortured, before they can make that assertion, based upon the evidence that was put in the record, they would really need some mechanism of showing that the witness who testified that he hasn't been tortured knows what torture is. To the contrary, evidence was deduced that the witnesses put on by the government really didn't have an understanding or an appreciation of what torture is under the Convention Against Torture, and there couldn't be made a finding under the record that when he said that this individual hasn't been tortured, he meant in a way consistent with the Convention. And finally, on the last issue, which was an afterthought I wasn't privy to, but I did think was interesting and bore commenting, when the government argues that there's a significant difference between an adverse credibility determination and a weighing of the evidence determination, in this particular case I really don't think there is that much of a difference, because when you're looking at a mountain of evidence on one side, and you're looking at a scintilla of evidence on the other side, and saying I'm going with the scintilla instead of with the mountain, it's almost the equivalent of an adverse credibility determination. In fact, it's almost unavoidable that you're kind of forced into that issue. I'm sorry, I thought you were finished at 3rd when we're not making eye contact. I'm so sorry. Could I just beg 30 seconds to finish this up? You may wrap up quickly, please. Thank you very much. But I don't think that we need to establish a new standard, because the standard of substantial evidence does it for us already. There has to be substantial evidence, and looking at substantial evidence as being relative, you can't rule in favor of the board with a scintilla of evidence against a mountain of credible evidence on the other side. So I don't think there needs to be a new standard, but I don't think it's that different. I submit your honors. Thank you very much to all counsel, and I appreciate that you came back to us after the clerk's office made a mistake in not including you in the initial notice. The case just argued is submitted, and I will terminate this call, and I will initiate a conference call with my colleagues to discuss the case. Thank you very much. Thank you, Your Honor. Thank you, Your Honor. Thank you.
judges: Mills, Wallace, Graber